UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE SCALIA,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>*Plaintiff*,<br><br>v.<br><br>WEAVER RACING, INC.., d/b/a WEAVER RACING STABLE, INC., d/b/a WEAVER RACING STABLES INC., d/b/a GEORGE WEAVER RACING STABLE, d/b/a GEORGE WEAVER RACING STABLE LLC, and GEORGE R. WEAVER, an individual,<br><br>*Defendants*. | Complaint<br><br>Civil Action No. 20-cv-3836 |

1.      Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) ("the Act" or "the FLSA"), alleging that Defendants violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief. The Secretary brings this action seeking, *inter alia*, back wages and liquidated damages for several dozen hot walkers and groomers employed by the Defendants at horse stables in Elmont and Saratoga, New York.

2.      Defendant George R. Weaver ("Weaver") is a horse racing trainer and the president and sole owner of the horse racing training company, Defendant Weaver Racing, Inc., d/b/a Weaver Racing Stable, Inc., d/b/a Weaver Racing Stables Inc., d/b/a George Weaver Racing Stable, d/b/a George Weaver Racing Stable LLC ("Weaver Racing" or "Corporate Defendant")

(collectively, "Defendants"). Together, Defendants employ trainers, assistant trainers, forepersons, hot walkers and groomers to provide care and training to racing horses in Elmont and Saratoga, New York, and other locations around the country.

3. In violation of the Act, Defendants failed to pay their groomers and hot walker employees overtime for all hours worked in excess of forty in a week. Defendants' employees' schedules varied, as they performed extra tasks or worked longer hours, such as on race days. However, Defendants failed to accurately track employees' time. In some instances, to conceal the actual hours worked by their employees and facilitate their underpayment scheme, Defendants falsified time records, and as a result paid employees for fewer hours than they actually worked. In addition, when calculating the premium pay owed for a particular week, Defendants failed to include all required compensation, resulting in further underpayments. As a result of Defendants' unlawful payment and record keep practices, 59 current and former groomers and hot walkers are owed unpaid wages under the Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

5. Venue of this action lies in the United States District Court for the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims occurred in this District, specifically in Nassau and Queens Counties.

## FACTUAL ALLEGATIONS

### The Parties

6. Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

7. Defendants WEAVER and WEAVER RACING together employ groomers and hot walkers, among other employees, at racing horse stables in, among other places, Elmont, Saratoga Springs, and Queens, New York (among other locations outside New York).

8. Defendant WEAVER RACING is a corporation organized under the laws of the State of Kentucky.

9. Together, Defendants operate a year-round thoroughbred horse training stable at Belmont Park Race Track ("Belmont"), located at 2150 Hempstead Turnpike, Elmont, New York 11003. Defendants also race horses at Aqueduct Racetrack in Queens, New York.

10. Defendant WEAVER, an individual, is the founder, president, and sole owner of Weaver Racing. He is in active control and management of the Corporate Defendant. Defendant Weaver has regulated the employment of all persons employed by him and Defendant Weaver Racing, and he had the authority to hire, fire, and supervise employees, control their hours worked, determine employee compensation, and otherwise act directly and indirectly in the interest of the Corporate Defendant in relation to the employees during the relevant time period. He is thus an employer of Defendants' employees within the meaning of section 3(d) of the Act.

### Defendant Weaver Racing is an Enterprise Engaged in Commerce

11. Defendant Weaver Racing is an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

12. Defendant Weaver Racing is engaged in the business of training and racing thoroughbred horses.

13. In addition to New York, Defendants train at stables in Florida and Kentucky and race horses in yet other states.

14. Defendants employ the hot walkers and groomers listed in Exhibit A, as well as other employees, in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including the handling of, selling of, or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to horse feed, bedding, blankets, harnesses, saddles, stirrups, reins, brushes, horse shoes, liniments, and poultices.

15. At all times relevant to this Complaint, Weaver Racing had an annual gross volume of sales made or business done in an amount not less than $500,000.

16. Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

17. Together with Weaver, Weaver Racing is an employer of its groomers and hot walkers within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

### DEFENDANTS' PROHIBITED PAY PRACTICES

*Defendants Failed to Pay Premium Pay for All Overtime Hours Worked*

18. From August 1, 2015 through July 31, 2017, Defendants failed to pay overtime premiums to employees who worked more than 40 hours in a given week, as required by the Act. First, Defendants knowingly undercounted employees' actual hours worked, concealing from payroll and time records many of the hours employees spent performing assigned tasks. Second,

Defendants undercompensated employees by paying lump sums — with no overtime premiums and without regard for hours worked — for tasks such as travel, cutting grass, and certain assignments caring for horses. Accordingly, in workweeks for which employees worked overtime, Defendants have failed to properly calculate and pay employees the required overtime premiums. Third, Defendants have denied their H-2B visa employees the proper overtime wages owed to those employees at the rates required by the Act.

<u>Defendants Undercounted Employee Hours and Falsified Time
Records to Conceal Actual Hours Worked</u>

19. Defendants employed employees as groomers to provide general care for horses, for instance by preparing horses' meals, watering and feeding the horses, cleaning their stalls, cleaning their coats, and maintaining and cleaning gear used to ride and train horses, including saddles, harnesses, stirrups, and reins.

20. Defendants employed hot walkers to exercise horses, warm horses up ahead of races, and cool horses down again after races and workouts.

21. Defendants' groomer and hot walker employees alike have had responsibilities for assisting with the racing of horses on race days at Belmont, Saratoga, Aqueduct, and other locations at which Defendants race horses.

22. Defendants' employees employed as groomers and hot walkers regularly worked in excess of 40 hours per week, some of which were unrecorded.

23. Defendants generally assigned hot walkers and groomers to work a fixed number of hours each week according to a schedule. Defendants assigned most hot walkers and groomers to work a minimum of roughly 43 to 48 hours per week.

24. Defendants also assigned hot walkers and groomers to complete tasks or assignments that required them to work hours in addition to those in their base schedule, such as working races, doing laundry, traveling between racetracks, filing horseshoes, and cutting grass.

25. As a result, during the period at issue, many of Defendants' groomers and hot walkers regularly worked upwards of 56 hours per week, with some working as many as 60 or more hours in a week.

26. Nevertheless, at all times relevant to this Complaint, Defendants regularly denied their employees the full premium pay owed pursuant to the Act for all hours worked over 40 per week.

27. During the relevant period, Defendants did not accurately track employee work time and did not have a system for tracking when employees started and stopped working each day.

28. Instead, Defendants created falsified timesheets that consistently underreported the number of hours worked by hot walkers and groomers, contributing to underpayment.

29. Defendants' Assistant Trainer (at all times relevant to this Complaint, Blair Golen) regularly filled out timesheets purportedly listing employees' hours worked. These timesheets did not include all hours worked by Defendants' employees. Nonetheless, Golen directed employees to sign these sheets, in an attempt to disguise Defendants' underpayments.

30. Defendants used these false timesheets to compute employees' weekly pay.

31. For example, the week of June 27 to July 3, 2017, Defendants assigned a groomer to perform extra assignments to care for racing horses, and assist on one race day, for a total of about 57 hours. However, the time records that Defendants maintained for this employee recorded fewer than 50 hours of work. Defendants paid this groomer for fewer than 50 hours of work.

32. In a further attempt to conceal Defendants' underpayments, Defendant Weaver and supervisor Blair Golen instructed employees in July 2017 to underreport their hours if interviewed by representatives of the U.S. Department of Labor. Specifically, Weaver and Golen gathered about 10 employees at Belmont and directed them to report working fewer afternoon shifts and shorter morning shift hours than employees actually worked.

### Defendants Miscalculated Premium Pay Rates by Failing to Include Necessary Payments in Employees' Regular Rate

33. During the relevant time period, Defendants compensated hot walkers and groomers with lump sums for performing certain tasks, such as working at races and the related travel, or for doing laundry, cutting grass, or rolling bandages.

34. For such tasks, Defendants paid, for example, $50 to cut grass, $35 for attending a race, or $75 for roundtrip travel from New York to Maryland or Delaware.

35. Defendants paid such flat sums in weeks that employees worked in excess of 40 hours for Defendants.

36. Defendants paid such flat sums without regard to the hours employees spent performing such tasks for Defendants, and without calculating the actual overtime premium owed to each employee for such additional overtime hours, as required by the Act.

37. Nor did Defendants take account of all hours worked when calculating employees' overtime compensation due in such workweeks, as required by the Act.

38. For example, the week of May 30 to June 5, 2017, according to Defendants' records, an employee worked 45.5 hours for Defendants at Saratoga, for which the employee was paid $602.16. Defendants calculated this amount by using the employee's hourly rate of $12.48 per hour for the first 40 hours, plus a premium rate of $18.72 per hour ($12.48 x 150% = $18.72) for the 5.5 overtime hours. According to Defendants' records, Defendants also paid this employee

7

an additional $50 for cutting grass during the same week, without regard to the actual hours spent performing that additional task, and without including that payment in calculating the proper overtime premium due to this employee for all hours in that workweek.

### Defendants Failed to Pay the Prevailing Wage Rate for Overtime Hours for H-2B Employees

39. During the relevant period, Defendants employed temporary nonimmigrant employees ("H-2B employees") as some of their groomers and hot walkers at Belmont and Saratoga, pursuant to the H-2B provisions of the Immigration and Nationality Act, as amended, including 8 U.S.C. § 1101(a)(15)(H)(ii)(b), § 1184(c)(14), and regulations at 20 C.F.R. Part 655, subpart A (2008), 20 C.F.R. Part 655, subpart A (2015), and 29 C.F.R. Part 503 (2015).

40. Defendants' H-2B employees regularly worked in excess of 40 hours in a week but during the relevant period, Defendants never paid premium pay based on the required regular rate for any overtime hours.

41. In a Temporary Employment Certification signed under penalty of perjury pursuant to the H-2B program, Defendants promised the government that in 2016, they would pay their H-2B employees a rate of $12.09 per hour. Pursuant to 29 C.F.R. § 778.5, $12.09 per hour was the regular rate owed to these employees within the meaning of Section 7 of the Act.

42. For example, according to Defendants' own records and not counting unrecorded hours worked, during the week ending April 20, 2016, Defendants paid an H-2B worker who worked 61 hours at a rate of $13.50 ($9.00 x 1.5) for each hour over 40, instead of at the required premium rate of $18.14 ($12.09 x 1.5) for each hour over 40. As a result, Defendants denied the H-2B employee at least $97.34 in premium pay for that week.

*Defendants Failed to Make and Maintain Accurate Records*

43. From August 1, 2015 through July 31, 2017, Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

44. More specifically, Defendants did not create or maintain adequate and accurate records of the dates and times that their employees started and stopped work each day.

45. Moreover, Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours that their employees worked each week.

46. Instead, as described herein, Defendants created falsified time sheets that were incorrect on their face and underreported hours worked by employees.

47. Defendants also made certain payments to employees in cash off the books, without maintaining records of such payments. Accordingly, Defendants did not make or maintain complete records of total wages paid each pay period.

*Defendants' Violations of the Act Were Willful*

48. Defendants have long known that their longstanding pay and recordkeeping practices violate the FLSA.

49. As described herein, Defendants falsified their time records to underreport the actual hours worked and to avoid compliance with the Act's requirement that Defendants pay time and a half for all hours worked beyond 40 in a week.

50. As described herein, in a knowing attempt to conceal their unlawful scheme, Defendants instructed their employees to underreport their hours if interviewed by representatives of the U.S. Department of Labor.

**TOLLING AGREEMENT**

51. On or about September 6, 2018, Defendants and the Secretary, through counsel, knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement").

52. The Tolling Agreement states that any legal proceeding brought by the Secretary or affected employees following November 15, 2018 shall be deemed to have been filed 1,202 days prior to the actual filing date.

53. Accordingly, this complaint, filed on August 20, 2020 shall be deemed to have been filed March 6, 2017.

**FIRST CAUSE OF ACTION**
**Violation of Sections 7(a) and 15(a)(2) of the FLSA**
**Failure to Pay Overtime**

54. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 53 of the complaint.

55. Defendants willfully have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours, as prescribed in Section 7 of the Act, without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

56. Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

**SECOND CAUSE OF ACTION**
Violation of Sections 11(c) and 15(a)(5) of the FLSA
Failure to Make, Keep, and Preserve Adequate and Accurate Records

57. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 53 of the complaint.

58. Defendants willfully have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees, and prejudgment

interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED:     August 20, 2020
                New York, New York

                                        KATE S. O'SCANNLAIN
                                        Solicitor of Labor

                                        JEFFREY S. ROGOFF
                                        Regional Solicitor

BY:    /s/ Jason E. Glick
        JASON E. GLICK
        Trial Attorney

        U.S. Department of Labor,
        *Attorneys for Plaintiff Secretary of Labor*

        U.S. Department of Labor
        Office of the Regional Solicitor
        201 Varick Street, Room 983
        New York, NY 10014
        (646) 264-3650
        (646) 264-3660 (fax)
        glick.jason.e@dol.gov
        ny-sol-ecf@dol.gov

**Scalia v. Weaver Racing Inc., et ano., 20-cv-3836**
**Complaint  - Exhibit A**

**Employee Names**
Adrian G. Rodriguez
Antonio Hernandez
Carlos Alberto Rodriguez Hernandez
Carlos Cruz
Christian Martinez
Diego G. Juarez
Eduardo Becerra Lopez
Eduardo Garcia
Eduardo Rodriguez
Elias Olmedo Damian
Enrique Garcia Alvarado
Felipe Cortes
Floridalma Perez
Gilberto Rodriguez Garcia
Guillermo Garcia Cardenas
Guillermo Torres Rodriguez
Gustavo De Jesus Martinez
Hernan Castro
J. Doe 1
J. Doe 2
James McPherson
Jesus Moreno
Jesus Perez
Jorge Garcia
Jose Alfredo Hernandez
Jose Castro
Jose Garcia
Jovany Juarez Gutierrez
Juan Oseguera
Juan Pablo Ortega Hernandez
Juan Rico
Julio C. Castro Garcia
Laura Jimenez
Lucio A. Gayosso Rosillo
Luis A. Ruiz Torres
Luis Fernandez
Luis Guillen
Luis Moreno
Luis Torres Garcia
Marco Rodriguez
Maria Beatrice Hernandez
Maria Lopez
Mario Castro

Mauricio G. Alvarado
Miguel Perez
Otto Garcia
Pedro Fragoso-Perez
Pedro Morales
Pedro Rivera Oliver
Rhadames Tejada Duran
Ramiro Mendoza
Rasheed Pinnock
Ricardo Becerra Mujica
Roberto Bravo
Ruben Garcia-Rodriguez
Sandra Ramirez
V. Martinez
Victor Lopez
Victor Perez Cruz